**COMMONWEALTH of Kentucky, Appellant,**

v.

**Jennifer LONG, Appellee.**

**No. 2002–CA–001896–DG.**

Court of Appeals of Kentucky.

July 25, 2003.

Case Ordered Published by
Court of Appeals Oct. 3, 2003.

Jack K. Giles, Lexington, KY, for appellant.

Russell J. Baldani, Baldani, Rowland & Richardson, Lexington, KY, for appellee.

Before EMBERTON, Chief Judge; McANULTY, Judge; and MILLER, Senior Judge.[1]

McANULTY, Judge.

The Commonwealth appeals the Circuit Court's order dismissing this driving under the influence case based on a denial of Jennifer Long's (Long) right to an independent blood test under Kentucky Revised Statutes (KRS) 189A.103(7). This matter originated in Fayette District Court, was appealed by Long to Fayette Circuit Court, and is now before us upon our grant of discretionary review. After our review of the statute, we conclude that the district court erred in applying the provisions of KRS 189A.103 to Long. Thus, we affirm the circuit court's dismissal.

On October 19, 2001, at about 1:45 a.m., Detective Richmond of the Lexington Police Department observed the vehicle driven by Long bump into a parked car in a gas station parking lot. Long then continued driving out of the parking lot and down the street. Subsequently, Detective Richmond stopped Long. Soon after the stop, Officer Joe Anderson arrived on the scene and conducted a number of field sobriety tests with Long. After Long demonstrated considerable difficulty in taking the field sobriety tests, Officer Anderson arrested her for first offense driving under the influence (DUI), and transported her to the Fayette County Detention Center, where she produced an intoxilyzer result of .094.

Long made a motion to suppress the intoxilyzer results on the basis that she had not been afforded her statutory right to an independent blood test. The district court held a hearing on the issue at which Officer Anderson, Long and Long's roommate, Jessie Hill, testified.

When asked about any conversation that Officer Anderson had with Long regarding her desire for an independent blood test, Officer Anderson could not recall anything other than Long signed a card stating she did not wish to take a blood test. Officer Anderson further testified that he would not let a DUI arrestee make a phone call to arrange for funds to pay for an independent blood test. Moreover, Central Baptist is the hospital that the police use when they are requesting a blood test, but Officer Anderson allows any DUI arrestee to choose the location for an independent blood test.

Long testified that she was a phlebotomist at Saint Joseph's Hospital in Lexington, Kentucky. Further, she believed that a blood test was more accurate than an intoxilyzer test, and she informed Officer Anderson that she wished to have an independent blood test. According to Long, Officer Anderson informed her that the cost would be $150.00, that she needed to have the funds on her, and that the test would be conducted at Central Baptist Hospital in Lexington, Kentucky.

Long testified that she had enough cash to cover the cost of the test in her purse; however, when Officer Anderson arrested her, he told her to grab her coat. There was no discussion about her purse, and Long left it in her car, which her roommate, Jessie Hill, drove home after Officer Anderson took Long into custody. Long testified that she asked Officer Anderson if

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

she could call Hill to bring the money to the hospital. Officer Anderson denied her request to telephone Hill. In addition, Long testified that Officer Anderson informed her that the results of the blood test would probably be higher than the intoxilyzer, so it would be to her benefit not to take it. Finally, as a result of their conversation, Long testified that she believed Central Baptist was the only hospital where she could have the test done. As an employee of Saint Joseph hospital, Long testified that she could have had the test done there without having to pay in advance.

Hill's testimony confirmed that Long had sufficient funds in her purse to pay for the test, and that Hill took the purse with her when she returned to their apartment in Long's car.

The district court denied Long's motion to suppress. Thereafter, Long entered a conditional guilty plea and appealed to the circuit court. On appeal, the circuit court reversed the district court and dismissed Long's case with prejudice, precipitating this appeal.

The sole issue on appeal is: in declining to allow Long the opportunity to telephonically contact a friend to bring monies to pay for an independent blood test, did the arresting officer deny Long of her right to proceed under KRS 189A.103?

 As the proper interpretation of KRS 189A.103 is purely a legal issue, our review is *de novo*. *Floyd County Board of Education v. Ratliff*, Ky., 955 S.W.2d 921, 925 (1997); *Keeton v. City of Ashland*, Ky.App., 883 S.W.2d 894, 896 (1994). On review, it is our duty to construe the statute "so as to effectuate the plain meaning and unambiguous intent expressed in the law." *Bob Hook Chevrolet Isuzu v. Transportation Cabinet*, Ky., 983 S.W.2d 488, 492 (1998). Moreover, we understand that the judiciary is "not at liberty to add or

subtract from the legislative enactment ...." or to attempt to cure any omissions. *Commonwealth v. Harrelson*, Ky., 14 S.W.3d 541, 546 (2000); *Commonwealth v. Taylor*, Ky., 945 S.W.2d 420 (1997).

Long entered a conditional guilty plea to the offense of driving under the influence, the elements of which are defined in KRS 189A.010(1)(a) and (b). Specifically, under the statute, "[a] person shall not operate or be in physical control of a motor vehicle anywhere in this state ... [h]aving an alcohol concentration of 0.08 or more as measured by a scientifically reliable test or tests of a sample of the person's breath or blood taken within two (2) hours of cessation of operation or physical control of a motor vehicle ... [w]hile under the influence of alcohol[.]"

 Under our statutory scheme however, an individual arrested for driving under the influence who has submitted to the initial test administered by the state is allowed an independent test "to obtain another result to compare with or controvert the police officer's test." *Commonwealth v. Minix*, Ky., 3 S.W.3d 721, 724 (1999); *see* KRS 189A.103(7). KRS 189A.103(7) is as follows:

> After the person has submitted to all alcohol concentration tests and substance tests requested by the officer, the person tested shall be permitted to have a person listed in subsection (6) of this section of his own choosing administer a test or tests in addition to any tests administered at the direction of the peace officer. Tests conducted under this section shall be conducted within a reasonable length of time. Provided, however, the nonavailability of the person chosen to administer a test or tests in addition to those administered at the direction of the peace officer within a reasonable time shall not be grounds for

rendering inadmissible as evidence the results of the test or tests administered at the direction of the peace officer.

Not only must a person be afforded the right to an independent blood test, but they must also be informed of this right under KRS 189A.105 as well as some other rights that attach upon the individual's submission to a breath, blood or urine test. In pertinent part, KRS 189A.105 is as follows:

(2) (a) At the time a breath, blood, or urine test is requested, the person shall be informed:

1. That, if the person refuses to submit to such tests, the fact of this refusal may be used against him in court as evidence of violating KRS 189A.010 and will result in revocation of his driver's license, and if the person refuses to submit to the tests and is subsequently convicted of violating KRS 189A.010(1) then he will be subject to a mandatory minimum jail sentence which is twice as long as the mandatory minimum jail sentence imposed if he submits to the tests, and that if the person refuses to submit to the tests he will be unable to obtain a hardship license; and

2. That, if a test is taken, the results of the test may be used against him in court as evidence of violating KRS 189A.010(1), and that if the results of the test are 0.18 or above and the person is subsequently convicted of violating KRS 189A.010(1), then he will be subject to a sentence that is twice as long as the mandatory minimum jail sentence imposed if the results are less than 0.18; and

3. That if the person first submits to the requested alcohol and substance tests, the person has the right to have a test or tests of his blood performed by a person of his choosing described in KRS 189A.103 within a reasonable time of his arrest at the expense of the person arrested.

. . . .

(3) During the period immediately preceding the administration of any test, the person shall be afforded an opportunity of at least ten (10) minutes but not more than fifteen (15) minutes to attempt to contact and communicate with an attorney and shall be informed of this right. Inability to communicate with an attorney during this period shall not be deemed to relieve the person of his obligation to submit to the tests and the penalties specified by KRS 189A.010 and 189A.107 shall remain applicable to the person upon refusal. Nothing in this section shall be deemed to create a right to have an attorney present during the administration of the tests, but the person's attorney may be present if the attorney can physically appear at the location where the test is to be administered within the time period established in this section.

(4) Immediately following the administration of the final test requested by the officer, the person shall again be informed of his right to have a test or tests of his blood performed by a person of his choosing described in KRS 189A.103 within a reasonable time of his arrest at the expense of the person arrested. He shall then be asked "Do you want such a test?" The officer shall make reasonable efforts to provide transportation to the tests.

In this case, the Commonwealth argues that KRS 189A.103 does not confer upon individuals who submit to the test requested by the state the right to make a telephone call to obtain funds to pay for an individual blood test. Moreover, KRS 189A.105(3) provides the DUI arrestee the right to contact an attorney for a brief period immediately preceding the state ad-

ministered test; however, the statute does not go on to specify that the individual has the right to arrange for funds to pay for an independent test.

■ In construing the statutory scheme of KRS Chapter 189A, we believe the plain meaning and unambiguous intent expressed by our legislature is that once an individual has submitted to the state's breath, blood or urine test to determine his or her alcohol concentration, that individual has a statutory right to have an independent test by a person of his or her own choosing within a reasonable time of the arrest at the individual's own expense. Moreover, our legislature makes provisions to insure that individuals who have been arrested for driving under the influence know that they have this right by mandating that the police inform them of their right at least two different times. In order to give effect to this right, the statute requires some minimal police allowance and assistance. Considering the totality of the circumstances in this case, we believe the police officer denied Long of her right to obtain an independent test because of a failure to make a reasonable effort to accommodate her right.

Because an individual is in police custody during the period when he or she is entitled to an independent blood test, the statute requires some level of facilitation by the police to afford the individual this right. In other words, by the nature of the proceedings, the individual does not have the liberty of arranging for the test himself, so the statute makes at least one provision for police assistance, which is police transportation to the independent testing facility. However, that the statute does not provide for a phone call to obtain the necessary funds should not foreclose that individual's right. Indeed, to hold as such would render meaningless the requirement of the statute that the individual be given the opportunity to obtain an independent chemical analysis of his blood, and would further sanction police misconduct in misinforming an individual about the test and preventing an individual from obtaining such a test. *See State v. Weaver,* 86 Ohio App.3d 427, 621 N.E.2d 526, 529 (1993) (holding that suppression of state-administered breath test is necessary where the accused is denied access to a telephone despite his requests to arrange an independent chemical test).

Other jurisdictions having similar statutory schemes and having considered the level of facilitation required by the police have also taken a totality of the circumstances approach. *See State v. Buffington,* 189 Ga.App. 800, 377 S.E.2d 548 (1989); *State v. Messner,* N.D., 481 N.W.2d 236, 240 (1992) ("Whether the accused has made a reasonable request for an independent test and whether police have interfered by denying the accused a reasonable opportunity to obtain that test depend on the totality of the circumstances."); *Bilbrey v. State,* Al.App., 531 So.2d 27, 30 (1987); *Commonwealth v. Alano,* 388 Mass. 871, 448 N.E.2d 1122, 1128 (1983). *See generally* John P. Ludington, Annotation, *Drunk driving: Motorist's right to private sobriety test,* 45 A.L.R.4th 11 (1986). In *Buffington,* the Georgia court of appeals concluded that the police did not give an individual arrested for driving under the influence the opportunity to have an independent blood test when that individual came up a few dollars short of the required amount, and the police officer did not permit him to contact a relative to bring him the remainder. *See id.* at 549. In reaching this conclusion, the appellate court considered the applicable Georgia statute that allowed one accused of driving under the influence the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing.

*See id.* at 550. Moreover, the court held that there was a "corresponding duty on the part of law enforcement officers not to refuse or fail to allow the accused to exercise that right." *Id.*

Similar to our statute, the Georgia statute stated that "the justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." *Id.* (citing O.C.G.A. § 40–6–392(a)(3)). Accordingly, the Georgia appellate court held that it was

> incumbent on the trial court to determine whether the failure or inability to obtain the additional test is justified. In making that determination, the trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks an independent test. Factors to be considered include, but are not limited to, the following: (1) availability of or access to funds or resources to pay for the requested test; (2) a protracted delay in the giving of the test if the officer complies with the accused's requests; (3) availability of police time and other resources; (4) location of requested facilities, e.g., the hospital to which the accused wants to be taken is nearby but in a different jurisdiction; (5) opportunity and ability of accused to make arrangements personally for the testing.

*Id.* In the end, the appellate court concluded that the individual's request to contact a relative was reasonable, and the officer's response was not. *See id.*

We believe the district court should have considered the totality of the circumstances in this case. First, the police officer could have allowed or instructed Long to bring her purse, her wallet or only the necessary cash with her. When the police officer took Long into custody without any of her personal belongings other than her coat, we believe she should have been permitted to telephone someone to arrange for the monies to be brought to her. We believe this would have taken minimal time and effort on the part of the police. We further believe such an accommodation was reasonable and necessary for Long to exercise her right to an independent blood test under the circumstances.

In the Commonwealth's brief, it raises a number of questions concerning the lengths to which the police must go in accommodating an individual's requests. In such situations, we hold that a police officer has a duty to act reasonably under the circumstances, considering such factors as those outlined above in the *Buffington* opinion. Moreover, the Commonwealth would be free to establish during a subsequent trial the effect of the passage of time on a person's blood alcohol level to explain any differences between the state-administered test and the individual's later independent blood test. However, as long as the test can be administered within a reasonable time of the individual's arrest, that individual is entitled to police cooperation to obtain the test.

For the foregoing reasons, the order of the Fayette Circuit Court is affirmed.

ALL CONCUR.