Christopher T. HARDIN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

NO. 2015–CA–000034–MR

Court of Appeals of Kentucky.

RENDERED: MARCH 25, 2016; 10:00 A.M.

Rehearing Denied May 19, 2016

---

Brief for Appellant: Ryan Bennett Driskill, Greenville, Kentucky.

Brief for Appellee: Jack Conway, Attorney General of Kentucky, James C. Shackelford, Assistant Attorney General, Frankfort, Kentucky.

BEFORE: ACREE, CHIEF JUDGE; J. LAMBERT AND TAYLOR, JUDGES.

*OPINION*

J. LAMBERT, JUDGE:

Christopher Hardin pleaded guilty to the charge of operating a motor vehicle under the influence, fourth-offense, a Class "D" felony, in violation of Kentucky Revised Statutes (KRS) 189A.010, but he preserved his right to appeal the denial of his motion to suppress evidence seized during his arrest. After careful review, we affirm the trial court's order denying Hardin relief.

On August 20, 2014, Muhlenberg County Deputy Sheriff Alex Piper (Deputy Piper) was on routine patrol in the vicinity of Drakesboro, Kentucky. While traveling on State Route 176 East at approximately 5:45 p.m., Deputy Piper observed an ATV sitting about three feet off the highway near a gated entrance to property owned by Peabody Coal Company. The ATV (which was being operated by an individual Deputy Piper later discovered to be the Appellant, Hardin) was facing the highway. Because there were no other roads or driveways on the side of the highway opposite the ATV, Deputy Piper did not believe Hardin was simply crossing the roadway.

Deputy Piper went over to advise Hardin that he should not be on the highway with an ATV and to see if he had permission to be on the coal company property

that was immediately behind him at that time. Deputy Piper observed a gate behind Hardin and did not think ATVs were allowed on the property. As the deputy approached Hardin in his cruiser, he turned on his lights, got out of the vehicle, and began to walk toward Hardin. As he neared Hardin, he smelled alcohol. Deputy Piper asked if Hardin had been riding on the highway, and he said he had not. Deputy Piper then asked if he had been drinking alcohol, to which Hardin stated that he had drunk two beers earlier that day.

Deputy Piper noted that Hardin had slurred speech and that his eyes were glassy, so he asked him to submit to a preliminary breath test, which showed alcohol present in Hardin's system. After the preliminary breath test, Deputy Piper, certified in giving field sobriety tests, gave Hardin three tests to see if he was intoxicated. Hardin failed the first two tests, which consisted of the horizontal gaze nystagums test and the walk-and-turn test, which showed that he was above the .08 limit of intoxication. Hardin did not fail the one leg test. Hardin was arrested and charged with operating a vehicle under the influence of alcohol and taken to Muhlenberg Community Hospital for a blood test, at which time Deputy Piper read Hardin the implied consent notice.

After the blood test, Deputy Piper took Hardin back to the county jail and again read the implied consent notice to him at 6:27 p.m. At this point, Hardin stated that he wanted an independent blood test and advised that he could pay for the test. Deputy Piper then contacted his supervisor, Deputy Terry Vick, who was working an investigation, and discussed possible alternate sites where the independent test could be conducted. Deputy Piper spoke with Deputy Vick about transporting Hardin to a hospital in Madisonville, about thirty minutes away.

At the time Hardin made his request, there were only two other members of the sheriff's department on duty, including Deputy Vick, who was conducting an investigation in another area of Muhlenberg County. The other deputy on duty had to transport a local inmate to another county. In any event, Deputy Vick decided that it would take too much time to travel to Madisonville for the test; instead Deputy Piper informed Hardin that he could have another independent test administered at Muhlenberg Community Hospital. Hardin, believing this would in essence be a duplicate of the test he submitted to earlier, decided to forego the independent test. At no time did Hardin name a specific facility or person he would like to conduct the test. According to Deputy Piper, Hardin just stated that he wanted the test to occur "somewhere else."

Hardin initially entered a not-guilty plea and filed a motion to suppress the blood test against him on the ground that he requested an independent blood test, but the officer refused to escort him to a facility for administration of such independent testing. He also argued that his initial stop was unlawful and that any evidence obtained therein should be suppressed. After a suppression hearing where the above evidence and testimony was presented, the trial court denied Hardin's motion to suppress. On December 8, 2014, Hardin entered a plea of guilty, conditioned upon his right to appeal the denial of his motion to suppress all evidence seized against him as a result of the traffic stop on the grounds that the warrantless search and seizure of Hardin was unreasonable and unlawful. This appeal now follows.

On appeal, Hardin argues that his constitutional rights were violated when police seized him on the side of the road without

reasonable suspicion. Hardin also claims that Deputy Piper's failure to provide him with an independent blood test pursuant to KRS 189A.103(7) mandates the suppression of the blood test.

■ Appellate review of a trial court's decision on a motion to suppress requires application of a two-step analysis. *Goncalves v. Commonwealth*, 404 S.W.3d 180, 189 (Ky.2013). First, it must be determined whether the trial court's findings of fact are supported by substantial evidence. *Id.* (Citations omitted). The Court then conducts a *de novo* review of the trial court's application of the law to the established facts to determine whether its ruling was correct as a matter of law. *Id.* (Citations omitted).

■ Regarding Hardin's first argument that the search and seizure was invalid and thus his constitutional rights were violated, we agree with the trial court that Deputy Piper had reasonable suspicion that criminal activity was afoot to justify a stop of Hardin. The trial court's findings of fact in this regard are supported by substantial evidence. First, Deputy Piper observed Hardin sitting very close to a highway on an ATV. There were no other roads across from Hardin which would support an argument that he was simply just going to cross the highway onto another private road. Furthermore, Hardin was on private gated property, which Deputy Piper knew did not allow ATVs. Thus, Deputy Piper had a reasonable basis to believe that Hardin was about to drive an ATV on a highway and had been trespassing on private property. Given all of these facts, it was reasonable for Deputy Piper to conclude that criminal activity was afoot and thus a stop was warranted. Furthermore, as Deputy Piper was talking to Hardin, he smelled alcohol, and thus was justified in investigating further. Any evidence regarding Hardin's intoxication that was ob-

tained as a result of this stop was not tainted and should not have been suppressed. The trial court's findings in this regard are supported by substantial evidence and will not be disturbed. Furthermore, the trial court's legal conclusion that the stop was proper and that suppression was not warranted is also proper. We find no error in this regard.

Hardin also argues that Deputy Piper's failure to provide him with an independent blood test mandates the suppression of the blood test the police obtained against him. He argues that there is no issue of fact that he submitted to drug testing as requested by the arresting officer and therefore was entitled to request an additional blood test, which he did.

We agree that Hardin requested an independent blood test, and that he had the right to request that test. KRS 189A.103 provides, in part:

(6) Only a physician, registered nurse, phlebotomist, medical technician, or medical technologist not otherwise prohibited by law can withdraw any blood of any person submitting to a test under this section; and

(7) After the person has submitted to all alcohol concentration tests and substance tests requested by the officer, the person tested shall be permitted to have a person listed in subsection (6) of this section of his or her own choosing administer a test or tests in addition to any tests administered at the direction of the peace officer. Tests conducted under this section shall be conducted within a reasonable length of time. Provided, however, the nonavailability of the person chosen to administer a test or tests in addition to those administered at the direction of the peace officer within a reasonable time shall not be grounds for rendering inadmissible as evidence the

results of the test or tests administered at the direction of the peace officer. In *Commonwealth v. Long*, 118 S.W.3d 178, 183 (Ky.App.2003), this Court held that KRS 189A.103 "requires some level of facilitation by the police" in order to give the statute effect. The Court said police efforts to accommodate a defendant must be reviewed under the totality of the circumstances approach. This Court adopted a non-exclusive five-factor test to aid in this analysis:

> (1) [A]vailability of or access to funds or resources to pay for the requested test; (2) a protracted delay in the giving of the test if the officer complies with the accused's request; (3) availability of police time and other resources; (4) location of requested facilities, e.g., the hospital to which the accused wants to be taken is nearby but in a different jurisdiction; [and] (5) opportunity and ability of accused to make arrangements personally for the testing.

*Id.* at 184 (citations and internal quotation marks omitted).

The Kentucky Supreme Court approvingly referred to *Long*'s analysis in *Lee v. Commonwealth*, 313 S.W.3d 555, 556 (Ky. 2010). However, the Supreme Court found no reason to engage in *Long*'s analytical model for two reasons. First, "it does not appear that Appellant requested a particular medical provider for the test ...." and, therefore, the five factors in *Long* were not implicated. *Id.* Second, there was no evidence of bad faith on part of the officer because the officer had no reason to know that the doctor at the local hospital would refuse to draw blood.

Like in *Lee*, Hardin here did not request a specific person or agency to administer the test and therefore it is likely unnecessary to consider the five *Long* factors. Likewise, there is no evidence that Deputy Piper acted in bad faith in attempting to help Hardin obtain an independent test. Nonetheless, even under the five-factor test set forth in *Long*, it appears that Deputy Piper made sufficient efforts to facilitate an independent test for Hardin.

In *Long*, the police officer denied the defendant her statutory right to a second test when the officer did not allow her to telephone a friend to bring money for a blood test following police administration of a breath test. *Long*, 118 S.W.3d at 181. In the instant case, Deputy Piper asked if Hardin knew anyone to call to draw blood, but Hardin did not know anyone. Deputy Piper offered to transport Hardin back to the local hospital for a second blood draw. Hardin declined. Deputy Piper contacted his supervisor about possible locations to have blood drawn again, but the only option was going to a hospital out of the county a half-hour away. The evidence reflected that there were only two other officers on duty that night and both were engaged in other police matters, and thus Deputy Piper transporting Hardin to Madisonville was not a realistic option.

Of the five factors mentioned in *Long*, only the first favors Hardin. Hardin stated that he had available funds to pay for an independent test. The second and fourth factors, the amount of delay and location of "requested" facilities, favor the Commonwealth. It was a thirty-minute drive to the next closest medical facility that could draw blood. As mentioned above, a thirty-minute drive each way would render one of the three available officers unavailable for approximately 1.5 hours, allotting for a thirty-minute drive there and back and thirty minutes to administer the blood test. Therefore, the third factor favors the Commonwealth also, because the police had limited resources that evening, and an officer being gone for that period of time in addition to

the time that had already elapsed during Hardin's arrest would put an additional strain on those resources. Finally, Hardin had the opportunity to make his own arrangements given to him by Deputy Piper, but did not do so. In light of all the factors, it appears to this Court that the police made a reasonable effort to facilitate additional testing for Hardin.

Finding no error, we affirm the Muhlenberg Circuit Court's December 5, 2014, order denying Hardin's motion to suppress the fruits of the search and seizure during his arrest and the results of the initial blood test administered by the police. Therefore, we affirm the judgment and conviction of sentence entered on December 23, 2014.

ALL CONCUR.

**J.L.C., a Child Under Eighteen; A.M.V., a Child Under Eighteen; and V.B., a Child Under Eighteen, Appellants**