OPINION OF THE COURT BY JUSTICE CUNNINGHAM
*623 Around 2:30 a.m. on August 4, 2014, Lexington Police Officer Michael Steele responded to the scene of an accident in which Appellee, ("Riker"), was observed driving his vehicle into a parked car on Jersey Street in Lexington, Kentucky. Detecting the odor of alcohol on Riker, Officer Steele asked Riker to submit to field sobriety testing and a portable breath test ("PBT"). Riker agreed to do so. He failed the field sobriety testing and registered a .281 blood alcohol level on the PBT. After arresting Riker and transporting him to the Fayette County Detention Center, Officer Steele read the pertinent portion of the statutory implied consent warning to Riker and asked him to submit to an intoxilyzer test after the requisite 20-minute waiting period. Riker agreed to do so. The result of that test administered at approximately 3:45 a.m. was a .266 blood alcohol level.
Pursuant to Kentucky Revised Statute (KRS) 189A. 103(7) and KRS 189A. 105(4), Officer Steele then asked Riker if he desired an independent blood test at his expense at the University of Kentucky Medical Center (UKMC). Riker responded in the affirmative and was then transported by Officer Steele to UKMC. Upon arrival, the hospital receptionist informed Riker that the cost would be $450. Riker only had $100 dollars on him at the time. Since this was not enough to pay for the test, Riker informed Officer Steele to "take me back to jail."
After an evidentiary hearing, the Fayette District Court denied Riker's motions to suppress his .266 intoxilyzer result and to dismiss his third offense DUI charge. On appeal, the Fayette Circuit Court reversed, concluding that Riker had been denied his statutory right to obtain an independent blood test. The court also determined that Riker's right to due process had been violated since the results of the independent blood test may have provided him with exculpatory evidence. The circuit court ordered that the results of the blood alcohol tests obtained by the police be suppressed. The Court of Appeals unanimously affirmed the circuit court. We granted discretionary review.
The legal issue in this case concerns the interpretation and application of two statutes permitting DUI suspects to obtain an independent blood test. For the following reasons, we reverse the decision of the Court of Appeals.
Analysis
Statutory construction is a matter of law which requires de novo review by this Court. Hearn v. Commonwealth, 80 S.W.3d 432, 434 (Ky. 2002) (citing Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet, 983 S.W.2d 488 (Ky. 1998) ). Claims under the Fourteenth Amendment's Due Process Clause are also reviewed de novo. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 54 (Ky. 2011).
Statutory Right
There are two statutes at issue here: KRS 189A. 103(7) and KRS 189A. 105(4). The former permits a DUI suspect *624 to have a medical professional of his or her own choosing to administer a "test or tests in addition to any tests administered at the direction of the peace officer." KRS 189A. 105(4) is similar but more specific. It provides:
Immediately following the administration of the final test requested by the officer, the person shall again be informed of his right to have a test or tests of his blood performed by a person of his choosing described in KRS 189A.103 within a reasonable time of his arrest at the expense of the person arrested. He shall then be asked "Do you want such a test?" The officer shall make reasonable efforts to provide transportation to the tests.
The plain language of this section lists three requirements: 1) that the officer inform the suspect of his or her right to have the independent test or tests performed; 2) the officer must specifically ask "[d]o you want such a test?"; and 3) that the officer "make reasonable efforts to provide transportation to the tests." Id. (Emphasis added). The only portion of this statute that is remotely ambiguous is the latter. In any event, the reasonableness of the officer's efforts to provide transportation is not at issue in the present case. No other express provision of the statute is at issue here either. As such, we conclude that Officer Steele satisfied his duties under the plain language of KRS 189A.105(4).
However, we also acknowledge that such rights are not entirely inelastic, nor should they be interpreted or applied as such. For example, in analyzing KRS 189A. 105(4), the Court of Appeals has previously determined that "[i]n order to give effect to this right, the statute requires some minimal police allowance and assistance." Commonwealth v. Long, 118 S.W.3d 178, 183 (Ky. App. 2003).
In Long, the court determined that a violation of the KRS 189A. 105(4) occurred where the officer did not permit the suspect to telephone her roommate to bring her money to pay for the independent drug test. Unlike the present case, the issue in Long concerned the conduct of the arresting officer. Here, however, the alleged violation of KRS 189A. 105(4) arises from the price of the test, which is completely out of the officer's control. Although the $450 cost of the blood test at issue here is concerning, it is not the prerogative of this Court to establish or regulate prices on medical services. Most importantly, the narrow holding in Long only extends to cases where satisfying the purpose of the statute requires only minimal police assistance. Riker has failed to argue that any additional assistance whatsoever by Officer Steele could have resulted in Riker obtaining a blood test. Therefore, we cannot conclude that a statutory violation occurred here.
Constitutional Right
Riker also argues that the relevant statutes cannot be read in isolation of greater due process concerns. At the heart of this argument is the notion that the cost of the test becomes prohibitive at a certain price, which essentially renders the statutory right meaningless. Although not without merit, that problem is beyond the purview of the courts.
No provision in either our state or federal constitutions requires purely statutory rights to be comprehensive in scope. Nevertheless, we also acknowledge that constitutional rights, like the previously discussed statutory rights, should not be interpreted too rigidly. As noted by the U.S. Supreme Court in Little v. Streater, "Due Process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.
*625 Rather, it is flexible and calls for such procedural protections as the particular situation demands." 452 U.S. 1, 5, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) (internal citations and quotations omitted).
Little involved a state statute that assigned the cost of blood tests in paternity cases to be borne by the party requesting the test. The Court held that the statute violated the Due Process Clause of the Fourteenth Amendments when applied to indigent litigants. Id. at 3, 101 S.Ct. 2202. The Court reasoned as follows:
[N]ot only is the State inextricably involved in paternity litigation such as this and responsible for an imbalance between the parties, it in effect forecloses what is potentially a conclusive means for an indigent defendant to surmount that disparity and exonerate himself. Such a practice is irreconcilable with the command of the Due Process Clause. Id. at 12, 101 S.Ct. 2202.
Relying on Little, Riker also echoes the conclusion of the Fayette Circuit Court that his right to due process had been violated since the results of the independent blood test may have provided him with exculpatory evidence. Unlike Little, however, the blood test in the present case does not present a "potentially conclusive means for an indigent defendant to ... exonerate himself." Id.
First off, Riker makes no assertion that he is indigent. Second, the results of a hypothetical independent blood test would have been presented to the fact finder along with any other relevant evidence, including the results from the statutorily prescribed breathalyzer test administered by Officer Steele at the Fayette County Detention Center. In other words, Riker was provided with testing that indicated his blood alcohol content, even though he may not have been pleased with the results. Even if an independent blood test might have revealed a lower blood alcohol content than did the other tests, this evidence would not have been "conclusive." Neither are we aware of any cases which provide for the suppression of any lawfully obtained evidence by law enforcement. The purpose of the suppression rule is to "punish" law enforcement for acting unlawfully and in an unconstitutional manner. Such was not the case here.
The only way the indigent defendant in the Little case could obtain the conclusive means of proving paternity was if he paid for the paternity test himself. And the only way to obtain a judgment of paternity is to seek judicial action. As such, the power of the state is "inextricably involved in paternity litigation." Little, 452 U.S. at 12, 101 S.Ct. 2202. Riker, however, did not have to avail himself of the criminal justice system. He chose to imbibe at least some level of alcohol prior to operating a motor vehicle on a public street and then crashed his vehicle into a parked car, thus prompting the police to respond. That triggered an extensive statutory mechanism which provides DUI suspects with a rather significant amount of process. See KRS 189A. In sum, we are satisfied that Riker received due process.
Conclusion
For the foregoing reasons, we hereby reverse the Court of Appeals and reinstate the Fayette District Court's ruling denying Appellee's motion to suppress.
All sitting. All concur.