RENDERED: NOVEMBER 18, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0195-MR

KENNETH MCPEEK RACING
STABLE, INC.                                                            APPELLANT


                    APPEAL FROM FAYETTE CIRCUIT COURT
v.                  HONORABLE LUCY ANNE VANMETER, JUDGE
                    ACTION NO. 19-CI-00165


NORMANDY FARM, LLC                                                      APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, McNEILL, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Kenneth McPeek Racing Stable, Inc. appeals from an

order of the Fayette Circuit Court which granted a motion for summary judgment

in favor of Normandy Farm, LLC.  We conclude that the trial court erred in

granting summary judgment; therefore, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Kenneth McPeek is a licensed thoroughbred horse trainer doing business as Kenneth McPeek Racing Stables, Inc. In 2015, Mr. McPeek provided training services to Appellee pursuant to an oral agreement with its then owner, Nancy Polk. The agreement included payment of daily board and training fees. In addition, Mr. McPeek would receive a 12% commission on all purses won by horses he trained. Mr. McPeek also alleges that he was to receive a 5% commission when any horse he trained was sold.

In 2016, Mr. McPeek began training DADDY'S LIL DARLING and the horse began racing in June or July of that year. DADDY'S LIL DARLING won $1,335,305 in purses and Mr. McPeek received over $160,000 in commissions from those purses.

Following the death of Ms. Polk in August of 2018, Appellee's new owners terminated the relationship with Mr. McPeek and he performed no further services for Appellee. In November of 2018, Appellee's new owners sold DADDY'S LIL DARLING for $3,500,000. Soon thereafter, Mr. McPeek sent Appellee an invoice for $175,000, representing the 5% sale commission on DADDY'S LIL DARLING. Appellee refused to pay the money. In January of 2019, Appellant brought the underlying suit alleging claims for breach of contract, *quantum meruit*, and breach of implied contract in fact.

On December 27, 2021, Appellee moved for summary judgment. Appellee claimed that Kentucky Revised Statutes (KRS) 230.357(11) precluded Appellant from recovering. KRS 230.357(11) states:

> No contract or agreement for payment of a commission, fee, gratuity, or any other form of compensation in connection with any sale, purchase, or transfer of an equine shall be enforceable by way of an action or defense unless:
>
> > (a) The contract or agreement is in writing and is signed by the party against whom enforcement is sought; and
> >
> > (b) The recipient of the compensation provides a written bill of sale for the transaction in accordance with subsections (2)(a) and (3) of this section.

Appellee argued that because there was no written contract, Appellant was not entitled to any proceeds from the sale of the horse. Appellant responded to the motion by arguing that the statute did not apply to the training agreement at issue because the 5% commission was an additional fee for training the horse and not a commission related to the sale of the horse.

The trial court agreed with Appellee that KRS 230.357(11) applied and Appellant could not recover because the training agreement was not in writing. The court also found that KRS 230.357(11) precluded Appellant from receiving equitable relief. This appeal followed.

## STANDARD OF REVIEW

The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. . . . "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." Consequently, summary judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor[.]"

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citations omitted).

"Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky. App. 2001). Furthermore, statutory interpretation is a legal issue which we also review *de novo*. *Commonwealth v. Long*, 118 S.W.3d 178, 181 (Ky. App. 2003).

## ANALYSIS

Appellant argues on appeal that KRS 230.357(11) does not apply to the agreement in this case. We believe it would be beneficial if we were to set forth the entire statute, not just the single subsection at issue. This allows us to get a full picture of what the statute requires and what the statute seeks to regulate.

(1) For purposes of this section, "equine" means a horse of any breed used for racing or showing, including prospective racehorses, breeding prospects, stallions, stallion seasons, broodmares, yearlings, or weanlings, or any interest therein.

(2) Any sale, purchase, or transfer of an equine shall be:

> (a) Accompanied by a written bill of sale or acknowledgment of purchase and security agreement setting forth the purchase price; and

> (b) Signed by both the purchaser and the seller or their duly authorized agent or, in a transaction solely relating to a season or fractional interest in the stallion, signed by the syndicate manager or stallion manager.

(3) In circumstances where a transaction described in subsection (2) of this section is accomplished through a public auction the bill of sale requirement described in subsection (2) of this section may be satisfied by the issuance of an auction receipt, generated by the auction house, and signed by the purchaser or the purchaser's duly authorized agent. An agent who signs an auction receipt on behalf of his or her principal shall do so only if authorized in writing. When presented with such authorization, all other parties to the transaction may presume that an agent signing on behalf of his or her principal is duly authorized to act for the principal.

(4) It shall be unlawful for any person to act as an agent for both the purchaser and the seller, which is hereby defined as a dual agent, in a transaction involving the sale, purchase, or transfer of an interest in an equine without:

> (a) The prior knowledge of both the purchaser and the seller; and

(b) Written consent of both the purchaser and the seller.

(5) It shall be unlawful for a person acting as an agent for either a purchaser or a seller or acting as a dual agent in a transaction involving the sale, purchase, or transfer of an equine to receive compensation, fees, a gratuity, or any other item of value in excess of five hundred dollars ($500) and related directly or indirectly to such transaction from an individual or entity, including any consigner involved in the transaction, other than an agent's principal, unless:

(a) The agent receiving and the person or entity making the payment disclose in writing the payment to both the purchaser and seller; and

(b) Each principal for whom the agent is acting consents in writing to the payment.

(6) Any person acting as an agent for a purchaser or seller or acting as a dual agent in a transaction involving the sale, purchase, or transfer of an equine shall, upon request by his or her principal or principals, furnish copies of all financial records and financial documents in the possession or control of the agent pertaining to the transaction to the principal or principals. For purposes of this subsection, financial records shall not include the agent's or owner's work product used to internally evaluate the equine.

(7) Any person injured by a violation of this section shall recover treble damages from persons or entities violating this section, and the prevailing party in any litigation under this section shall be entitled to an award of costs of the suit, reasonable litigation expenses, and attorney's fees. As used in this section, treble damages shall equal three (3) times the sum of:

(a) The difference, if any, between the price paid for the equine and the actual value of the equine at the time of sale; and

(b) Any payment made in violation of subsection (5) of this section.

(8) Nothing in this section shall require disclosure of compensation arrangements between a principal and an agent where no dual agency exists, where the agent is acting solely for the benefit of his or her principal, and where the agent is being compensated solely by his or her principal.

(9) Notwithstanding any provision of the Kentucky Revised Statutes to the contrary, for transactions contemplated by this section that are accomplished through a public auction, this section shall not require disclosure of the reserves, the identity of the principals, or the auctioneer's commissions. Auction companies shall not be deemed to be dual agents for all purposes under this section.

(10) The provisions of this section shall not apply to the sale, purchase, or transfer of an equine used for showing if the sale, purchase, or transfer does not exceed ten thousand dollars ($10,000).

(11) No contract or agreement for payment of a commission, fee, gratuity, or any other form of compensation in connection with any sale, purchase, or transfer of an equine shall be enforceable by way of an action or defense unless:

(a) The contract or agreement is in writing and is signed by the party against whom enforcement is sought; and

(b) The recipient of the compensation provides a written bill of sale for the

> transaction in accordance with subsections (2)(a) and (3) of this section.

> (12) No person shall be held liable under this section unless that person has actual knowledge of the conduct constituting a violation of this section.

KRS 230.357. In the most simplistic of terms, this statute requires that a seller and buyer of a horse, or their agents, must have a written agreement, signed by both, for the sale, purchase, or transfer of a horse.

> When engaging in statutory interpretation,

> our main goal is "to give effect to the intent of the General Assembly." The clearest indicator of that intent is the "language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." And "[w]here the words used in a statute are clear and unambiguous and express the legislative intent, there is no room for construction and the statute must be accepted as written."

*Bell v. Bell*, 423 S.W.3d 219, 223 (Ky. 2014) (footnotes and citations omitted). "Generally, [t]he statute must be read as a whole and in context with other parts of the law. All parts of the statute must be given equal effect so that no part of the statute will become meaningless or ineffectual." *Kentucky Department of Corrections v. Dixon*, 572 S.W.3d 46, 49 (Ky. 2019) (internal quotation marks and citation omitted).

We agree with Appellant that KRS 230.357(11) does not apply in this case. After examining the statute as a whole, we believe that it only covers

agreements to sell, purchase, or transfer horses between a buyer and a seller, or their agents. The statute requires receipts and bills of sale, neither of which would be available for the agreement between Appellant and Appellee. The agreement at issue in this case was an agreement to train horses. It was an agreement for services, not an agreement to sell a horse.

Appellant would receive various fees and commissions in exchange for his services. One such fee would only arise should the horse be sold. Even though the commission revolved around the sale of a horse, it was still a fee for services, not a fee for the selling or purchasing of a horse. In other words, the agreement between Appellant and Appellee was not an agreement in "connection with any sale, purchase, or transfer of an equine[.]" KRS 230.357(11). Appellee was not selling a horse to Appellant and Appellant was not seeking to purchase a horse from Appellee.

We believe our conclusion is supported by the only case which has previously discussed KRS 230.357(11). In *Thoro-Graph, Inc. v. Lauffer*, Nos. 2010-CA-000891-MR and 2010-CA-000914-MR, 2012 WL 5038254 (Ky. App. Oct. 19, 2012), *discretionary review denied and ordered not to be published* (Aug. 21, 2013),[1] James Lauffer purchased a fifty percent interest in a racehorse named

---

[1] This case is cited pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c). It is not being cited as binding precedent, but only as persuasive authority.

RACHEL ALEXANDRA. He purchased this interest based in part on the recommendation of Jerry Brown, the owner of Thoro-Graph, Inc. Thoro-Graph examines thoroughbred horses and consults with people looking to purchase or sell said horses.

Due to certain circumstances not relevant to our case, Mr. Brown gave his recommendation to Mr. Lauffer before Mr. Lauffer was aware of Mr. Brown's commission rates. Mr. Lauffer believed these rates were too high. Mr. Lauffer ultimately bought RACHEL ALEXANDRA, but only offered to pay Mr. Brown a smaller fee. Mr. Brown accepted the lower fee because he did not want to litigate for the higher amount.

Mr. Lauffer later filed a declaratory action in which he argued that he did not have to pay Mr. Brown or Thoro-Graph any further amounts. The trial court held that there was no agreement between Mr. Lauffer and Mr. Brown because Mr. Lauffer was not aware of Mr. Brown's fee prior to Mr. Brown giving his recommendation. The trial court also held that Mr. Brown did give Mr. Lauffer valuable information; therefore, Mr. Brown was entitled to some compensation based on *quantum meruit*.

Mr. Lauffer appealed that decision and argued to another panel of this Court that KRS 230.357(11) applied and barred any compensation for Mr. Brown. Mr. Lauffer claimed that because he was purchasing a racehorse, any agreement

-10-

between him and Mr. Brown should have been in writing. The Court disagreed and held that the agreement between Mr. Brown and Mr. Lauffer was an agreement for services, not an agreement for the sale or purchase of a racehorse. *Lauffer*, 2012 WL 5038254, at *5.

## **CONCLUSION**

Just as in *Lauffer*, the agreement at issue here is an agreement for services, not an agreement for the sale or purchase of a racehorse. Based on the foregoing, we conclude that KRS 230.357(11) does not apply to this case; therefore, the trial court erred in granting summary judgment in favor of Appellee. We reverse and remand for further proceedings.[2]


ALL CONCUR.


BRIEFS FOR APPELLANT:

John D. Cox
Louisville, Kentucky

BRIEF FOR APPELLEE:

J. Mel Camenisch
H. Derek Hall
Lexington, Kentucky

---

[2] We make no decision as to whether the agreement at issue is valid or if Appellant and Appellee agreed to the 5% fee upon the sale of the horse.

-11-