RENDERED:  FEBRUARY 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1048-DG

TYLER STORY                                                          APPELLANT


ON DISCRETIONARY REVIEW FROM CAMPBELL CIRCUIT COURT
HONORABLE DANIEL J. ZALLA, JUDGE
ACTION NO. 21-XX-00001

v.


COMMONWEALTH OF KENTUCKY                                    APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, DIXON, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  Appellant Tyler Story ("Story") entered a conditional plea in

the Campbell District Court to driving under the influence, reserving the right to

appeal the 1) denial of his motion for return of his blood sample; and 2) denial of

his motion to suppress the resulting alcohol concentration blood test results.  The

Campbell Circuit Court – in an order entered August 16, 2021 – upheld the denials

and this Court granted discretionary review. After review, we affirm the opinion of the circuit court affirming the judgment of the district court.

## I. BACKGROUND

In June 2019, the Bellevue Police arrested Story for operating a motor vehicle under the influence of alcohol in violation of KRS[1] 189A.010 ("DUI").[2] After arriving at the jail, the police gave Story a breathalyzer test. Then, Story requested an independent blood test. He was taken to the hospital and – for reasons unclear in the record – the hospital drew his blood but did not *test* it. The hospital gave the blood sample to the Bellevue Police after it was drawn.

In November 2019, the Campbell District Court orally granted Story's motion to suppress the breathalyzer results due to the failure by the administering police officer to follow standard operating procedure. Immediately thereafter, the Commonwealth expressed its intent to test Story's blood sample for the presence of alcohol. Story objected and challenged the permissibility of the Commonwealth to test the blood because ownership of the blood was in question. At that time, all parties agreed that the blood was drawn at Story's request. The court did not resolve the issue immediately, instead requesting more information about the

---

[1] Kentucky Revised Statute.

[2] Story's June 2019 arrest citation reads, in part, "[Story] did not satisfy pre exit tests. [Story] did not satisfy [field sobriety tests]. [Story] stated he had been at [Bar 1] in Bellevue as well as [Bar 2] in Dayton and that he consumed multiple beers and two shots of Jagermeister. [Story] also admitted that he was intoxicated and should not be operating a vehicle."

blood. Specifically, the district court wanted to know if the blood sample was being stored properly and if the presence of alcohol was still discernable (due to the time elapsed since being drawn). The next day, Story filed a motion for the court to order the Bellevue Police to release the blood sample to Story. In December 2019, the district court – calling this a case of first impression due to the unique *sequence* of facts – denied Story's motion because the blood was "potential evidence" and needed to remain in the possession of the Bellevue Police.

In February 2020, Story filed a petition for a writ of prohibition asking the circuit court to prevent the signing of a search warrant that allowed the Commonwealth to test the blood. In June 2020, the circuit court denied the writ. Thereafter, the Commonwealth obtained a search warrant[3] to test the blood in a state-run crime laboratory. In November 2020, Story filed a motion to suppress the results of the blood test. The district court denied that motion, finding the cited precedent too distinct to be helpful or applicable. Story entered a conditional plea to the DUI, reserving his right to appeal. The circuit court affirmed both 1) the denial of the district court of Story's motion to release the blood sample to Story, and 2) the denial of the district court of Story's motion to suppress the Commonwealth's subsequent blood test results. This Court granted discretionary review.

---

[3] On appeal, Story does not challenge the validity of the search warrant.

## II.    ANALYSIS

### A. Denial of Motion to Release Blood Evidence

Our analysis requires the interpretation of Kentucky statutes, which is a question of law that we review *de novo*. *Hauber v. Hauber*, 600 S.W.3d 204, 207 (Ky. 2020) (citation omitted). As such, we afford no deference to the statutory interpretations of lower courts. *Id*. (citation omitted).

On appeal, Story argues that the denial by the district court of his motion to release the blood sample was a violation of his statutory right to an independent blood test. Under our statutory scheme, an individual arrested for DUI – who has submitted to the initial test(s) requested by the state – is allowed to request an independent blood test pursuant to KRS 189A.103(7).[4] Here, the facts are uncontroverted. Story consented to all the tests requested by the police officer. Story then requested an additional blood test. The police officer drove Story to the hospital for the blood draw. The hospital drew the blood and gave it to the police. The police correctly stored the blood for possible future testing. We find no statutory violation because the police officer granted Story's request and assisted Story in obtaining a blood sample. The police are required to make a "reasonable

---

[4] In 2019, at the time of Story's arrest, KRS 189A.103(7) read, in pertinent part, "After the person has submitted to all alcohol concentration tests and substance tests requested by the officer, the person tested shall be permitted to have a person listed in subsection (6) of this section of his or her own choosing administer a test or tests in addition to any tests administered at the direction of the peace officer. Tests conducted under this section shall be conducted within a reasonable length of time."

effort to facilitate additional testing" for the driver. *Hardin v. Commonwealth*, 491 S.W.3d 514, 519 (Ky. App. 2016). It is not the duty of the police officer to *test* the blood, only to help in the administration of the test (*i.e.*, blood draw). The police officer did not fail to perform his statutory duty.

Story argues the blood sample was *only intended* for comparison purposes and should have been released after there was nothing to which it could be compared. Story refers this Court to *Commonwealth v. Minix*, 3 S.W.3d 721 (Ky. 1999), and *Commonwealth v. Long*, 118 S.W.3d 178, 181 (Ky. App. 2003). Both *Minix* and *Long* found that an individual arrested for DUI may obtain an independent test for comparison purposes.[5] However, both *Minix* and *Long* are distinguishable from the facts here.

In *Minix*, the driver submitted to two preliminary breath tests, but the instrument failed both times. *Minix*, 3 S.W.3d at 722. Then, after transported to the jail, the driver refused a request to take an additional breathalyzer test. *Id.* at 723. Our Supreme Court determined that "[s]ince the Commonwealth did not

---

[5] "The purpose of allowing an accused an independent test is to obtain another result to compare with or controvert the police officer's test. . . . This is analogous to obtaining a second opinion of a medical diagnosis. There can be no second opinion unless and until a first opinion has been rendered. . . . We can find no indication that the Legislature intended to provide a driver with the right to receive independent testing in the absence of an official test which could be used for prosecution purposes." *Minix*, 3 S.W.3d at 724. "Under our statutory scheme . . . , an individual arrested for driving under the influence who has submitted to the initial test administered by the state is allowed an independent test to obtain another result to compare with or controvert the police officer's test." *Long*, 118 S.W.3d at 181 (internal quotation marks omitted) (citing to *id.*).

obtain any test result that determined alcohol concentration, an independent test was not warranted." *Id.* at 724. The driver was denied a blood test because he did not complete *all* tests requested by the police. *Id.* Story, to the contrary, *did* complete all the tests requested by the police.

In *Long*, the driver requested an independent blood test after submitting to the officer's tests. *Long*, 118 S.W.3d at 180. The police officer informed the driver that if she wished to have an independent blood test, she needed to have the funds with her to pay for the test. *Id*. The driver asked the police officer if she could call her roommate to bring the money to the hospital, but the police officer denied her request. *Id*. at 180-81. This Court ruled that the police officer denied the driver "her right to obtain an independent test because of a failure to make a reasonable effort to accommodate her right." *Id*. at 183. Unlike in *Long*, here the police officer assisted Story in obtaining a blood draw. *Minix* and *Long* acknowledge the statutory obligation of the police to assist a driver in getting a blood draw; here, the Bellevue Police met this obligation.

Next, the Commonwealth argues Story abandoned the blood sample by not asserting his right of possession within a reasonable time (five months).[6] We do not agree. "What constitutes abandoned property has to be determined on a

---

[6] The abandonment argument appears in the Commonwealth's appellate brief and the circuit court's written order, but from our review, the district court found the blood to be evidence because the police *possessed* it, not because it was *abandoned*.

-6-

case-by-case basis. Therefore, the act of abandonment itself turns to a large degree upon the possessor's state of mind." *Watkins v. Commonwealth*, 307 S.W.3d 628, 630 (Ky. 2010) (citation omitted). The Commonwealth cites to *Watkins* and *Marino v. Commonwealth*, 488 S.W.3d 621 (Ky. App. 2016), but both cases are factually distinguishable from this case.

First, in *Watkins*, the defendant fled a car – leaving incriminating evidence in the trunk – after crashing the vehicle during a police car chase. *Watkins*, 307 S.W.3d at 629. "Leaving property behind, when in flight from apprehension by law enforcement, must be considered in and of itself an abandonment of that property." *Id*. at 629. Second, in *Marino*, a detective gave the defendant water in a Styrofoam cup, which he drank out of and left in the jail library; the detective took the cup and tested the saliva in the cup for DNA, matching it to a previous sexual assault. *Marino*, 488 S.W.3d at 623. "When a person leaves his garbage in a location where a third party (*i.e.*, a stranger) will collect it, the person who left the garbage has no reasonable expectation of privacy[.]" *Id*. at 624 (internal quotation marks omitted).

Here, unlike in *Watkins* and *Marino*, Story did not intend to abandon his blood sample by leaving it with the police. To the contrary, leaving the blood with the police in fact *preserved* it for possible future use in legal proceedings; if Story had taken possession of the blood, chain of custody concerns could have

-7-

resulted. Story *did* request the blood sample back within a reasonable time. Story did not know if he wanted to test the blood until after the ruling on the admissibility of the breathalyzer results. Story orally requested the return of the sample *at the breathalyzer suppression hearing*, **and** he filed a written motion *the day after* the breathalyzer suppression hearing. The blood was not abandoned.

The blood draw was not testable because it was abandoned; it was testable because it was evidence. In 2019, the year of Story's blood draw, KRS 189A.105 stated in pertinent part, "if the person refuses to submit to [breath, blood or urine tests], the fact of this refusal may be used against him in court as evidence . . . *if a test is taken*, the results of the test may be used against him in court **as evidence** . . . ." KRS 189A.105(2)(a)1. and 2. (emphasis added). Stated another way, a driver has the choice whether to consent to a breathalyzer test or blood draw, but if he or she chooses to consent to a test, those results are then evidence.[7] Evidence is not for one side or the other, but it is an objective aide for finding the truth. *Fisher v. Duckworth*, 738 S.W.2d 810, 813 (Ky. 1987) ("The rules of

---

[7] "With driving being a privilege regulated by the state, Kentucky, like other states, imposes conditions on those who choose to operate a vehicle on its roadways, one being consenting to testing for alcohol or other substances if an officer has reasonable grounds to believe the motorist is violating Kentucky's DUI statute[.]" *Commonwealth v. McCarthy*, 628 S.W.3d 18, 28 (Ky. 2021) (citing KRS 189A.010(1); *Commonwealth v. Duncan*, 483 S.W.3d 353, 355-56 (Ky. 2015); KRS 189A.103(1)). "If the motorist affirmatively refuses consent − declines to cooperate with a test − he faces certain statutorily-defined consequences." *Id*. (referring to KRS 189A.103).

evidence have evolved carefully and painstakingly over hundreds of years as the best system for arriving at the truth. They bring to the law its objectivity.").

The district court's application of the law – in the denial of the motion to release the blood sample – is consistent with our understanding of Kentucky law. Story's statutory rights were not violated because the police assisted him in obtaining an independent blood sample on the night he was arrested. The blood sample was susceptible to a search warrant, not because it was abandoned, but because it became evidence after Story requested the draw. Therefore, we affirm the order of the circuit court affirming the denial of the district court of Story's motion to release the blood sample.

### B. Denial of Motion to Suppress Test Results

> The standard of review of a pretrial motion to suppress is twofold. First, we review the trial court's findings of fact under a clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. We then conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law.

*Haney v. Commonwealth*, 653 S.W.3d 559, 564 (Ky. 2022) (citing *Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019)). Here, the facts of the case are uncontested and the record on appeal includes no written findings of fact; therefore, our review will focus on the application of the law.

On appeal, Story argues that the blood test results should have been suppressed because the results were obtained pursuant to a search warrant which should not have been issued because the driving incident did not involve death or physical injury. Story supports this argument with *Combs v. Commonwealth*, 965 S.W.2d 161 (Ky. 1998). However, this interpretation of *Combs* is incorrect. *Combs* deals specifically with implied consent and the supposition that police may not get a search warrant for a blood test if the driver *refuses* the blood draw, and the situation did not involve death or physical injury. *Combs*, 965 S.W.2d at 164 ("The plain language of KRS 189A.103 and KRS 189A.105 prohibits compelled body searches of a DUI suspect following a refusal to take a blood test, unless death or physical injury are involved.").

Story argues his fact pattern is consistent with *Combs* because both defendants opposed the blood **test**. Story is looking at the verbiage of the holding, but not the intent of the Court. The *Combs* Court was discussing body searches (a blood draw) and when it is permissible to take blood from someone without consent; Story argued *Combs* was about a **forced test**, but Combs was actually discussing a **forced blood draw**. *Commonwealth v. Lopez*, 3 S.W.3d 351, 353 (Ky. 1999), *abrogated on procedural grounds by Commonwealth v. Carman*, 455 S.W.3d 916 (Ky. 2015) (emphasis added) ("*Combs* is limited to those situations where a search warrant was necessary to **obtain** blood evidence in order to

prosecute a DUI case not involving injury or death . . . . [The *Combs* holding] does not control a situation where a defendant expressly consents to a blood alcohol test in compliance with KRS 189A.103."). Here, unlike in *Combs*, Story expressly consented, indeed **requested**, the blood draw; therefore, the *Combs* precedent is distinct, distinguishable, and not a factor in our review.

Story consented to the blood draw. The Commonwealth obtained a valid search warrant to test the blood evidence. We find no error in the district court's application of the law.

## CONCLUSION

Therefore, we AFFIRM the opinion of the Campbell Circuit Court affirming the judgment of the Campbell District Court.

TAYLOR, JUDGE, CONCURS.

DIXON, JUDGE, CONCURS AND FILES SEPARATE OPINION.

DIXON, JUDGE, CONCURRING: While I agree with the majority analysis and conclusion, I write separately merely to address one issue more fully. The district court herein required the Commonwealth to obtain a search warrant before testing Story's blood sample. Oddly, the institution drawing the sample failed to test it and instead gave the sample to the arresting officer. When the Commonwealth sought to test this evidence – evidence that had remained in its possession since the blood draw – the district court's stated reason for requiring the search warrant was

that it sought to determine whether the sample had been stored properly and whether the presence of alcohol would still be present. I believe this was error. As the majority correctly notes, neither Story nor the Commonwealth raised the issue of the necessity of the warrant.[8]

My concern is that the absence of addressing the issue of the necessity of a search warrant could lead to an argument that a search warrant is required before any evidence within the Commonwealth's possession is tested. What the district court failed to discern is that the information it sought to be established prior to testing is, rather, information required in determining whether such evidence may be introduced into evidence at trial. Stated another way, the district court put the cart before the horse. The reliability of any evidence offered must be established at the time the party seeks its admission as evidence, not before the party in control of the evidence determines its relevance.[9] Holding otherwise could lead defendants to demand search warrants for all sorts of evidence within the Commonwealth's possession, such as drugs, fingerprints, and rape kits, be obtained prior to testing. And if a search warrant had not been obtained prior to

---

[8] Of course, Story had already lost his petition for prohibition wherein he sought to prevent the search warrant being issued in order to prevent the sample's testing. Story really has no reason to object to the necessity of the warrant in the first place.

[9] Obviously, had this sample, once tested, revealed Story's blood alcohol level was below the legal limit the Commonwealth had an obligation to provide Story with this information had it continued the prosecution of the charge. *Brady v. Maryland*, 373 U.S. 83, 86, 83 S. Ct. 1194, 1196, 10 L. Ed. 2d 215 (1963).

testing how many arguments would be made for suppression of this evidence?  Let me be clear, I do not believe that the majority Opinion upholds the necessity of search warrants prior to testing.  I merely fear that our failure to make this point clear could lead to the misapplication of the holding of this Opinion.

BRIEF FOR APPELLANT:

Joshua M. McIntosh
Covington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky